## Dayton v. Joy
### [Cite as 5 AOA 39]

Case No. CA 11846, CA 11847
Montgomery County, (2nd)
Decided July 2, 1990

*John J. Scaccia, Assistant City Prosecutor, 335 West Third Street, Room 372, Safety Building, Dayton, Ohio 45402, Attorney for Plaintiff-Appellant.*

*Terry L. Lewis, Suite 500, 111 West First Street, Dayton, Ohio 45402, Attorney for Defendants-Appellees.*

WOLFF, P.J.

Randy S. Joy was charged in the Dayton Municipal Court with assaulting a police officer (Officer Hooper), and with resisting arrest. His mother, Cheryl L. Joy, was charged with resisting arrest. The alleged assault occurred on Cheryl Joy's front porch. The alleged resisting arrest occurred within Cheryl Joy's residence. The defendants moved to suppress evidence of what happened within the residence on the basis that the police made an unauthorized entry into the residence.

Two conflicting accounts of the incident were presented at the suppression hearing. The police version was that two black police officers, Hooper and Jackson, were investigating an emergency call in east Dayton. During the course of the investigation, Jackson heard a racial slur from a group of people and so informed Hooper. Suspecting Randy Joy as the culprit, Hooper asked Randy Joy for identification on the porch of Cheryl Joy's resi-

dence. Randy Joy told Hooper "I don't have to show you shit," threw up his hands, and hit Hooper on the lip. Randy Joy attempted to retreat into the residence as Hooper attempted to arrest him. Inside the residence, Randy Joy and Cheryl Joy resisted Hooper's attempts to arrest Randy Joy.

The defense version was that at all times pertinent, Randy Joy was inside Cheryl Joy's residence, and that Officer Hooper, apparently believing Randy Joy had uttered the slur, barged into the house to arrest Randy Joy, and that Randy Joy struggled with Hooper, and Cheryl Joy tried to persuade Hooper to let her son go. According to the defense version, there was no physical altercation on the porch.

The trial court appears to have credited the defense version because it sustained the motion to suppress as to each defendant and dismissed both cases, stating in part:

"This case arose out of an arrest made by two Dayton Police officers. The police officers had responded to a certain neighborhood on a 911 call. Upon arriving at the 911 location which was 2104 Pershing, the officers found no disturbance. The occupant of that house advised she did not call and that there was no problem. However, they did notice a group on another street making a lot of noise. One of the officers stated the other officer told him someone uttered a racial remark. As a result of this, the officer who was told of the racial remark pursued an individual who was standing outside and went inside. At that time there was no articulable suspicion that this individual had committed any crime.

"***

"the Court does find that the officer did not have probable cause to arrest the individual Randy S. Joy. Initially there was no probable cause nor any articulable suspicion to connect Randy S. Joy to any criminal behavior. From the evidence, the Court finds that no assault occurred and that any testimony regarding the subsequent activities should be suppressed.

"***

"It is the opinion of this Court that the Motion to Suppress must be sustained. Once the Motion to Suppress is sustained, there is insufficient evidence of any criminal activity by either Randy S. Joy or Cheryl Joy. Therefore both cases are hereby dismissed."

From these orders suppressing evidence and dismissing the charges, the City of Dayton appeals.

For its first assignment of error, the City states:

"THE TRIAL COURT COMMITTED PREJU-DICIAL ERROR DISMISSING THIS CASE FOR INSUFFICIENT EVIDENCE FOLLOWING A MOTION TO SUPPRESS."

From its entries, *supra*, it appears that the trial court found that Randy Joy did not assault Officer Hooper, and that because the officer's entry into Cheryl Joy's home was improper, evidence as to what happened therein should be suppressed.

Even if the trial court determined that no assault occurred, it was improper to dismiss that charge after a suppression hearing and without a trial. See *State v. McNamee* (1984), 17 Ohio App. 3d 175. Furthermore, assuming *arguendo* that suppression was the appropriate remedy as to evidence of what occurred within the residence, dismissal of the resisting arrest charges was improper. See *State v. Kranz* (June 10, 1981), Ham. App. #C-800486, unrep., *State v. Powers* (May 17, 1989), Ham. App. #C-880304, unrep. Regardless of whether an order suppressing evidence is fatal to the state's case, the state is nevertheless entitled to proceed to trial, regardless of the inevitability of a judgment of acquittal.

The first assignment is sustained.

For its second assignment the City states: "THE TRIAL COURT COMMITTED PREJU-DICIAL ERROR IN BOTH GRANTING THE APPELLEES' MOTION TO SUPPRESS AND BY NOT FULLY SETTING FORTH THE RATIONALE, ANALYSIS AND SCOPE OF ITS RULING THUS MANDATING THE SUPPRESSION OF EVIDENCE BE RE-VERSED OR ALTERNATIVELY REMAND-ED FOR FURTHER PROCEEDINGS AND CONSIDERATION."

The City argues at length that Randy Joy was not privileged to assault Officer Hooper, regardless of whether Hooper was entitled to approach him. We think this argument is wide of the mark in this case because we understand the trial court to have determined that there was no assault.

Whether the trial court's order of suppression was, as we perceive it, directed only to the evidence of what happened within the residence, or directed as well to the evidence of the assault, we agree with the City that suppression was not an appropriate sanction, even if the trial court properly determined that Officer Hooper had no basis for approaching or arresting Randy Joy.

In LaFave, *Search and Seizure* (2nd), §1.13(b), it is stated:

"Sometimes defendants in situations resembling that in *Ferrone* have taken a different approach. Instead of, in effect, claiming a defense based upon the Fourth Amendment, they will invoke the exclusionary rule in an effort to exclude from evidence any testimony concerning their act of resistance. This not only permits them to rely upon the doctrine that testimony as to matters observed during an unlawful search is subject to suppression, but also sets up a situation in which if they were to prevail they could escape conviction for resorting to even death-causing force. Because "application of the exclusionary rule in such fashion would in effect give the victims of illegal searches a license to assault and murder," it is not surprising that the courts have held that an accused "cannot effectively invoke the fourth amendment to suppress evidence of his own unlawful conduct which was in response to police actions in violation of the amendment."

Although we have not been directed to any Ohio authority directly on point, we believe LaFave, a highly regarded treatise, pronounces a correct rule for Ohio courts, particularly in light of our Supreme Court's curtailing of the common law right to resist an unlawful arrest. See *Columbus v. Fraley* (1975), 41 Ohio St. 2d 173.

The second assignment is sustained.

The orders of suppression and dismissal will be reversed and these cases will be remanded for further proceedings consistent with this opinion. By this order of remand, we intimate nothing as to how the charges should be determined on the merits.

BROGAN, J. and FAIN, J., concur.